IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DARREN ROBERT HILL,<br><br>   Plaintiff,<br><br>  vs.<br><br>COUNTY OF BENEWAH, BENEWAH COUNTY SHERIFF DAVE RESSER, DEPUTY BRYAN DICKENSON SR., DEPUTY RICHARDSON, DEPUTY RODNEY BRYAN DICKENSON II, individually and in his official capacity, DEPUTY COLTON WYNN, individually and in his official capacity, DEPUTY PACIONE, individually and in his official capacity, DEPUTY JASON ROBINSON, individually and in his official capacity,<br><br>   Defendants. | Case No: 2:18-cv-00320-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Darren Robert Hill ("Hill") brings a number of state and federal claims against the County of Benewah, the Benewah County Sheriff, and several Benewah County deputies for an alleged illegal search, seizure and arrest. Pending before the Court is Defendants' Motion for Summary Judgment. Dkt. 24. After the Motion was fully briefed, the Court heard oral argument on October 10, 2019, and took the matter under advisement. For the reasons set forth below, the Court GRANTS the Motion for Summary Judgment.

# I. FACTS[1]

Hill filed the instant suit against Benewah County (the "County"), Benewah County Sheriff Dave Resser ("Sheriff Resser"), Deputy Bryan Dickenson Sr. ("Dickenson Sr."), Deputy Rodney Bryan Dickenson II ("Dickenson II"), Deputy Mike Richardson ("Richardson"), Deputy Colton Wynn ("Wynn"), and Deputy Lou Pacione ("Pacione") (collectively referred to hereinafter as "Defendants") on July 17, 2018.[2] Pursuant to 42 U.S.C. § 1983 and Idaho law, Hill alleges that the Defendants violated his rights to: (1) freedom from illegal search, seizure, restraint, confinement and imprisonment; (2) freedom from physical abuse, coercion and intimidation; (3) freedom from unlawful taking of property; and (4) freedom from unlawful arrest. Dkt. 1, at 5. The Complaint also raises a claim of negligent hiring, supervision and training against Benewah County and Sheriff Resser. *Id*. at 6.

Hill's claims arise out of a search and seizure at his residence on February 19, 2017. Hill lives in a trailer on real property owned by his parents. Hill's parents' address is 2317 Ora Avenue, St. Maries, Idaho. Hill's trailer is within walking distance of his parents' home, and Hill uses his parents' address on his driver's license and as his mailing address. While Hill's trailer does not have a separate mailbox, it does have its own separate address: 2313 Ora Avenue, St. Maries, Idaho. Hill's trailer is light cream with brown trim, while his parents' home is gray. Both 2317 and 2313, along with several other adjoining parcels, are

---

[1] Unless otherwise referenced, the following facts are undisputed.

[2] Hill's Complaint also named Deputy Jason Robinson as a defendant but he was dismissed as a defendant on January 30, 2019 pursuant the parties' stipulated dismissal. Dkt. 19.

taxed as a single unit. However, the gray home is marked on the outside as "2317," and the trailer is marked on the outside as "2313."[3]

On February 18, 2017, Dickenson II received information from Coeur D'Alene Tribal Police Department officer Jason Robinson ("Robinson") and a confidential informant ("CI") indicating that Hill had stolen property and drugs in his residence. The CI described stolen tools and heavy narcotic use "primarily in a trailer" located at 2317 Ora.[4] Dkt. 24-8, Ex. F, at 8; *see also* Dkt. 29, Ex. 2, at 16 (Robinson Affidavit stating the "CI described a trailer on the property as being one of the main places where narcotics were used and paraphernalia was present.") Based on his familiarity with Hill and information obtained from other officers, Dickenson II knew that Hill resided in a single wide trailer near his parents' home at 2317 Ora, but mistakenly believed the address for the trailer was also 2317 Ora. While Google Maps identifies Hill's parents' home as 2317 and the property next to it as 2313, Dickenson II testified in his deposition that he did not consult Google Maps to verify 2317 Ora was the correct address for Hill's trailer.[5]

---

[3] The deputies who conducted the search could not recall seeing any numbers on the trailer when they arrived at the property. Dkt. 29, Ex. 9, at 9:9-15. However, Hill contends the trailer is posted with the numbers "2313" on the front left corner. Dkt. 27, ¶ 7. As the non-moving party, the Court accepts Hill's contention that the trailer is marked on the outside with "2313" for purposes of summary judgment.

[4] The CI also suggested drugs and stolen property were located at a second address, 1230 D Street, Plummer, Idaho, belonging to an individual named Shawna Way. Dkt. 24-8, Ex. F, at 8. When they obtained the search warrant to search Hill's property, Dickenson II and Robinson also secured a second warrant to search the D Street property. Hill notes "1230 D Street is in no way connected or related to Darren Hill." Dkt. 30, at 2. Defendants do not contend otherwise, and the D Street warrant and subsequent search are not relevant to the instant motion.

[5] Hill contends Dickenson II's testimony before Judge Payne contradicts this deposition testimony because "Dickenson II said he looked at Google Maps, which shows both 2313 and 2317." Dkt. 30, at 7. Defendants counter Dickenson II told Judge Payne he obtained *directions* to 2317 Ora Avenue—which he believed to be plaintiff's address—by consulting Google Maps, but did not consult the images available on Google Maps to verify Hill's address before obtaining the search Warrant. Dkt. 31, at 2. Regardless of whether or

Later that night, Dickenson II and Robinson appeared telephonically before Benewah County Magistrate Judge Douglas Payne. After listening to the officers' sworn testimony regarding probable cause, Judge Payne issued a search warrant for Hill's residence. The warrant provided:

> Proof, by recorded testimony under oath, having been this day made before me by Jason Robinson & R. Dickenson that [they have] probable cause to believe that at the premises described as: 2317 Ora Avenue, St. Maries, Benewah County, Idaho, the home of Darren Hill including outbuildings and vehicles on the property, more particularly described as Residence, gray in color, 2 outlying shops, travel trailers, vehicles on property owned by Darren Robert Hill which may be reached by traveling North on 7th Street, to Main Ave. West, on Main Avenue to 22nd Street, North on 22nd Street to Ora Avenue, West on Ora Ave. to 2317 Ora Ave. the same being situated in the County of Benewah, State of Idaho, there is now being concealed certain evidence, to-wit: paraphernalia in residence & outlying buildings & vehicles, narcotics, contained in same, stolen golf cart, hand tools, which is evidence of the commission of the criminal offenses of Burglary, Possession of Stolen prop. and Methampha fel. [sic] in violation of Idaho Code Section 18-1401 & 2407 & 37-2732 and as I am satisfied that there is probable cause to believe that the property so described is being concealed at the premises above described and that the foregoing grounds for application for issuance of a search warrant exist.
>
> YOU ARE THEREFORE COMMANDED, at any time of the day or night to make immediate search of the premises named for the property specified, and if the property be found there to seize it, leaving a copy of this warrant and a receipt for the property taken, and prepare a written inventory of the property seized and return this warrant and bring the property before this court within fourteen (14) days of this date as required by law.

Dkt. 24-9, Exhibit G, at 2-3.

Dickenson II conducted the search at approximately 1:00 a.m. on February 19, 2017,

---

not Dickenson II looked at Google Maps, it is undisputed that Dickenson II knew Hill lived in the trailer on his parents' property, but mistakenly believed the trailer had the same address as Hill's parents' property. Dickenson II and Wynn both testified they knew Hill lived in the trailer and that his parents lived in a separate residence. Dkt. 29, Ex. 7, at 18:9-12; *Id.*, Ex. 9, at 9:5-20. It is also undisputed that Defendants never attempted to search Hill's parents' residence.

and was accompanied by Wynn and Pacione. Dickenson II informed Wynn and Pacione that he had a valid search warrant authorizing the search of Hill's trailer and the outbuildings surrounding it for drugs, paraphernalia and stolen property. Wynn confirmed in his deposition that he went to Hill's residence at the direction of Dickenson II and did not review the search warrant or verify whether 2317 Ora was Hill's correct address. Wynn also testified that he and the other officers conducting the search were aware that Hill lived in the trailer and that Hill's parents lived in a separate residence on the property. Dkt. 29, Ex. 9, at 9:12-25; 10:1-9. When questioned why he did not search the gray residence, Dickenson II stated: "My intent was only to search the residence of Darren Hill, that I knew to be the trailer." *Id.*, Ex. 7, at 18:11-12.

Upon arrival at Hill's trailer, Wynn and Pacione knocked on the front door while Dickenson II stood at the back door. Wynn knocked and announced several times but there was no answer.[6] Dickenson II heard movement inside the trailer and eventually opened the rear entrance. Dickenson II immediately saw Hill and informed him the officers were there to serve a search warrant. Wynn then handcuffed Hill, and Pacione secured Hill in the backseat of his patrol vehicle while Dickenson II and Wynn searched Hill's trailer. Shortly

---

[6] Hill appears to dispute that Wynn knocked and announced, stating Dickenson II "and other law enforcement personnel served the search warrant on Darren Hill's residence by opening the home's back door and observing Darren Hill within the residence." Dkt. 30, at 3. The dispute is immaterial because Judge Payne issued a no-knock, day or night search warrant. Judge Payne issued the no-knock warrant due to the organized pattern of crime described by the CI, the pattern of thefts being investigated, the report of methamphetamine use at the trailer, and the likelihood that the methamphetamine and/or stolen goods would quickly be sold so "the evidence may be disappearing as we speak." Dkt. 24-8, Ex. F, at 14-15. The Supreme Court has counseled that the "practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time." *Richards v. Wisconsin*, 520 U.S. 385, 396 n. 7 (1997); *see also United States v. Banks*, 540 U.S. 31, 36-37 (2003) (if reasonable suspicion of exigency is shown when the police are applying for a search warrant, then a magistrate acts within the Constitution in issuing a no-knock warrant).

after initiating the search, they discovered drugs and drug paraphernalia in Hill's trailer. Among other things, they found marijuana, methamphetamine, hydrocodone, and paraphernalia such as methamphetamine pipes and bongs, electronic scales with white powder residue, hundreds of small blue bags typically used to traffic narcotics, and various other items with white powder residue, including a knife, glass plate and mirror. Dkt. 24-4, Ex. B, at 4-6.

As soon as such items were discovered, Hill was arrested, transported to jail, and cited for drugs and paraphernalia.[7] Hill remained in custody for two days. On February 21, 2017, the Benewah County Prosecutor charged Hill with felony possession of methamphetamine and hydrocodone with intent to deliver. The same day, Judge Payne formally found probable cause to support the charges and set bail at $25,000. Bail was posted later that day and Hill was released from custody. With the exception of being handcuffed, Hill does not contend he was physically mistreated during his arrest or time in custody.

After Hill was taken to jail, Dickenson II, Wynn, and Pacione continued to search Hill's trailer and the surrounding outbuildings. They located a number of tools they believed were stolen and called in Richardson to confirm. Richardson had been investigating several reports of stolen property in the area and determined that numerous hand tools found in Hill's trailer and detached shop matched the descriptions of the stolen

---

[7] Hill suggests he was arrested before the search of his trailer because he was placed in handcuffs in a locked patrol car as soon as the deputies arrived. Defendants argue Hill was instead detained for officer safety during the search and was not formally arrested until they discovered drugs and paraphernalia in his trailer. As further discussed, below, the dispute is immaterial because, under Supreme Court precedent, Hill's brief detention during the search was lawful under the Fourth Amendment.

property. Ultimately, Dickenson Sr., Dickenson II, Richardson, Wynn, and Pacione (collectively referred to hereinafter as the "Individual Defendants") seized the narcotics, drug paraphernalia, and approximately twenty hand tools. [8] Although Hill disputes that the hand tools were stolen, he admits that the drugs and paraphernalia were his and only contests the seizure of the tools. Hill later requested that much of the property seized during the search be returned to him. The Prosecutor agreed that the property which could not be confirmed as stolen should be released from evidence. Although Hill was given the opportunity to retrieve such property, he does not dispute that he never did so.

The charges against Hill were ultimately dismissed on April 18, 2017. Hill contends the charges "were dismissed by the government based on law enforcement's failure to search the correct address as it was listed on the search warrant, 2317 Ora Avenue." Dkt. 30, at 4. Hill does not cite any evidence to support this contention, and the record suggests that although, in his criminal case, Hill had moved to suppress the evidence seized during the search because the warrant only authorized search of 2317 Ora, the motion was never ruled upon and Hill's criminal charges were dropped without prejudice on motion of the Prosecutor. Dkt. 24-1, at 4; Dkt. 24-19, Ex. Q.

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[8] After Hill arrived at the jail, Dickenson Sr. ordered Hill to provide the combination to two safes that had been located in his bedroom. When Hill refused, the Individual Defendants broke into the safes. One safe was empty and the other primarily contained documents such as vehicle registrations. During oral argument, Hill's counsel confirmed that Dickenson's Sr.'s request that Hill provide the combination to his safes, which Hill disregarded, was the only involvement Dickenson Sr. had with Hill during the events in question.

Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). However, the respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity," that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### III. ANALYSIS

#### 1. State Law Claims

#### a. Violation of Idaho's Constitution

Hill brings claims under both the United States Constitution and Idaho's Constitution, and notes Idaho jurisprudence holds the Idaho Constitution confers broader protection against unreasonable searches and seizures than does its federal counterpart. Dkt. 30, at 5-6 (citing *State v. Guzman*, 842 P.2d 660 (Idaho 1992)). However, this Court has repeatedly refused to recognize a direct cause of action for violations of the Idaho

Constitution. *Campbell v. City of Boise*, 2008 WL 2745121, at *1 (D. Idaho 2008) ("This Court has previously . . . held that no Idaho statute serves a function analogous to that of 42 U.S.C. § 1983 by creating a cause of action for violations of Idaho's Constitution.) (quoting *Hancock v. Idaho Falls Sch. Dis*t. No. 01, 2006 WL 1207629, at *3 (D. Idaho 2006)); *Sommer v. Elmore Cty.*, 903 F. Supp. 2d 1067, 1074 (D. Idaho 2012) (finding there is no direct cause of action under the Idaho Constitution nor any Idaho statute creating a cause of action for violation of the Idaho Constitution); *Mott v. City of McCall*, 2007 WL 1430764 (D. Idaho 2007) (same); *Boren v. City of Nampa*, 2006 WL 1430764, at *10-11 (D. Idaho 2006) (the "Idaho Constitution does not provide for a private cause of action for monetary damages based on an alleged violation of person's civil liberties."). Hill does not cite any authority which would call these holdings into question. Therefore, to the extent Hill's claims are raised under the Idaho Constitution, they fail as a matter of law.

### b. Idaho Code Section 6-610

Defendants argue that all state law claims against the Individual Defendants and Sheriff Resser are barred because Hill failed to post a bond pursuant to Idaho Code section 6-610. It is undisputed that Hill's state law claims against such defendants arose out of their official law enforcement duties. Hill also does not dispute that he failed to file a bond, but suggests federal law supersedes state law and that he was not required to post a bond to proceed in federal court.

While it is true a bond is not required for claims brought pursuant to 42 U.S.C. § 1983, any state law claims against the Individual Defendants are barred pursuant to Idaho Code section 6-610. Filing a bond is a "condition precedent" to "any civil action. . . against

any law enforcement officer, when such action arises out of, or in the course of the performance of his duty[.]" Idaho Code § 6-610(2). If the defendant objects to the lack of a bond at "any time during the course of a civil action against a law enforcement officer," "the judge *shall* dismiss the case." Idaho Code § 6-610(4), (5) (emphasis added). "Dismissal in this circumstance is mandatory." *Beehler v. Fremont Cty.*, 182 P.3d 713, 716 (Id. App. Ct. 2008) (citing *Monson v. Boyd*, 348 P.2d 93, 94 (Idaho 1959)). The same rule applies to state law claims against law enforcement officers brought in federal court. *Pauls v. Green*, 816 F. Supp. 2d 961, 975 (D. Idaho 2011).

Although not raised in his Response to Defendants' Motion for Summary Judgment, Hill's counsel devoted much of his oral argument to the claim that Idaho Code section 6-610 is unconstitutional because it prevents an indigent defendant from bringing a claim against law enforcement officials. Even if the issue had been properly raised in Hill's Response Brief, the Idaho Court of Appeals has advised indigent defendants that, if they are unable to afford the security bond under Idaho Code section 6-610, they should seek a waiver under Idaho Code section 31-3220 "prior to filing their complaint." *Beehler*, 182 P.3d at 717. Hill did not seek a waiver pursuant to Idaho Code section 31-3220 prior to filing the instant suit.

Hill's counsel also suggested that Idaho Code section 6-610 is impermissibly vague because it does not set forth a procedure for a federal court to determine the amount of the bond before a plaintiff files suit. While this Court has recognized that Idaho Code section 6-610 creates a procedural peculiarity, *Young v. Cty. of Boundary*, 2008 WL 564972, at *2 (D. Idaho 2008), the Court has also rejected the argument that the statute is impermissibly

vague, stating that a "plaintiff may simultaneously move for a bond to be waived or set by the court when the complaint is filed." *ET v. Lake Pend Oreille Sch. Dist. No. 84*, 2012 WL 13133641, at *6-7 (D. Idaho 2012) (citation omitted); *see also Allied Bail Bonds, Inc., v. Cty. of Kootenai*, 258 P.3d 340, 346  (Idaho 2011) (detailing the appropriate procedure for filing a bond pursuant to Idaho Code section 6-610).

The aforementioned cases put Hill on notice that he should have filed the requisite bond—or have sought waiver under Idaho Code section 31-3220—prior to, or at the time of, filing his complaint. Hill has never sought a waiver of the bond requirement and has not provided a valid explanation or justification for such failure. Thus, Hill's failure to file the bond required under Idaho Code section 6-610 mandates dismissal of his state law claims against Sheriff Resser, Dickenson Sr., Richardson, Dickenson II, Wynn, and Pacione.

### c. Liability for Battery, False Imprisonment and False Arrest pursuant to Idaho Code Section 6-904(3)

Moreover, even if Idaho code section 6-610 did not mandate dismissal of Hill's state law claims, none of the Defendants are liable for battery, false imprisonment or false arrest by operation of Idaho Code section 6-904. Specifically, under Idaho Code section 6-904(3): "A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . arises out of assault, battery, false imprisonment, false arrest...[.]"[9] The Idaho Supreme

---

[9] Idaho Code section 6-902 defines "employee" as an "officer, board member, commissioner, executive, employee, or servant of a governmental entity, including elected or appointed officials, and persons acting on behalf of the governmental entity in any official capacity[.]" Idaho Code § 6-902. Sheriff Resser and each of the Individual Defendants qualifies as an "employee" under this provision.

Court has held the employees of a governmental entity are immune from the aforementioned torts, "if there is no allegation of malice and/or criminal intent." *Hoffer v. City of Boise*, 257 P.3d 1226, 1229 (Idaho 2011). There are no allegations in Hill's Complaint or Response to Defendants' Motion for Summary Judgment, and there is no evidence in the record, to suggest that either Sheriff Resser or the Individual Defendants acted with malice or criminal intent. Accordingly, Idaho Code section 6-904(3) bars Hill's state law claims for battery, false imprisonment and false arrest against the Individual Defendants.

### d. Liability for Unlawful Seizure under Idaho Code Section 6-904(B)

Similarly, Idaho Code section 6-904(B) bars Hill's state law claim against Sheriff Resser and the Individual Defendants for unlawful seizure of property. This provision provides that a governmental entity and its employees, "while acting within the course and scope of their employment and without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct . . . shall not be liable for any claim which: (1) Arises out of the detention of any good or merchandise by any law enforcement officer." Idaho Code § 6-904(B)(1). There are no allegations or evidence in the record to suggest the Defendants acted with malice or criminal intent when seizing Hill's drugs, paraphernalia, and tools they believed were stolen.

"Reckless, willful and wanton conduct" is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result. I.C. § 6-904C. The standard requires the court to find that "[t]he specific harm . . . [is] manifest or ostensible,

and highly likely to occur." *Hunter v. Dep't of Corr.*, 57 P.3d 755, 761 (Idaho 2002) (alterations in original) (quoting *Harris v. State Dep't of Health and Welfare*, 847 P.2d 1156, 1158 (Idaho 1992)). Hill has not identified any specific harm that was likely to occur due to Sheriff Resser or the Individual Defendants' conduct. Hill does not contest the seizure of his drugs or paraphernalia and does not dispute that he was given an opportunity to retrieve the seized tools that could not be confirmed to be stolen but failed to do so. *See generally*, Dkt. 28; Dkt. 30, at 11-13.

Idaho Code section 6-904C defines gross negligence as "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others." Idaho Code § 6-904C(1). Hill does not identify any evidence or legal authority to suggest Sheriff Resser or the Individual Defendants were grossly negligent.

Rather than presenting any material facts or analogous caselaw to suggest the Defendants acted with criminal intent, recklessness, or gross negligence, Hill claims Idaho Code section 6-904, "is inapplicable to lawsuits filed in federal court under the Civil Rights Act." Dkt. 30, at 17. While Idaho Code sections 6-904(3) and 6-904B may be inapplicable to Hill's federal claims, they bar Hill's state law claims where, as here, there are no allegations or material facts to suggest Sheriff Resser or the Individual Defendants acted with malice and/or criminal intent, or that their actions were either reckless, willful, wanton, or grossly negligent. In sum, Hill's state law claims against Sheriff Resser and the

Individual Defendants also fail as a matter of law pursuant to Idaho Code sections 6-904(3) and 6-904(B).

### e. The County's Liability for Battery, False Imprisonment, False Arrest, and Unlawful Seizure under Idaho Statute

The Idaho Supreme Court has held the plain language of Idaho Code section 6-904(3) exempts governmental entities from liability for the torts it lists. *Hoffer*, 257 P.3d at 1228; *see also Bates v. 3B Det. Ctr.*, 2016 WL 1755404 (D. Idaho 2016) (extending *Hoffer's* holding to torts listed under Idaho Code section 6-904(B)). In other words, "no matter how [their] employees acted," Idaho governmental entities cannot be liable for state law claims arising under Idaho Code sections 6-904(3) or 6-904(B). *Id*. at *2. Thus, because the County, as a governmental entity, is immune from claims for false imprisonment, battery, false arrest, and the detention of property, the Court will also grant the County summary judgment on Hill's state law claims against it under Idaho Code section 6-904(3) and 6-904(B).

### f. Negligent Hiring, Training, and Supervision Claims against the County and Sheriff Resser

This leaves Hill with a state-law claim for negligent hiring, training, and supervision claim against the County and Sheriff Resser. To survive summary judgment on this claim, the plaintiff must "present evidence to raise a genuine issue of material fact concerning whether those who had the duty to supervise should have reasonably anticipated that those subject to their supervision would commit [a compensable tort.]" *Kessler v. Barowsky*, 931 P.2d 641, 648 (Idaho 1997). Hill alleges the County and Sheriff Resser were negligent in their "selection, supervision, and training" of Dickinson II, Wynn and Pacione. Dkt. 1, at

6. Other than this barebones allegation, Hill does not identify *how* the County and Sheriff Resser were allegedly negligent in their hiring, training, and supervision. There is no evidence to suggest the County and Sheriff Resser were negligent in hiring Dickinson II, Wynn, or Pacione because events in their past somehow suggested they were not likely to comply with the Fourth Amendment. Nor is there evidence in the record either to suggest the County or Sheriff Resser failed to train Dickenson II, Wynn, or Pacione on Fourth Amendment principals, or that they somehow should have known the deputies had some propensity to ignore their training or to otherwise violate the Fourth Amendment. Moreover, Hill does not suggest that the County or Sheriff Resser could reasonably have taken additional steps to prevent Dickenson II, Wynn, or Pacione's alleged unconstitutional acts. No reasonable jury could find the County or Sheriff Resser liable for Hill's state law claim of negligent hiring, training, and supervision on this record.[10]

### g. State Law Claims Pursuant to 42 U.S.C. § 1983

Notwithstanding the fact that Idaho does not recognize a direct cause of action for violation of the Idaho Constitution and that his state law claims fail under the provisions of Idaho Code sections 6-610, 6-904(3), or 6-904(B), Hill suggests his state law claims survive summary judgment because they are brought pursuant to 42 U.S.C. § 1983. Dkt. 30, at 16-17 (suggesting the requirements of the aforementioned statutes are inapplicable to lawsuits in federal court under 42 U.S.C. § 1983). However, state law rights are not enforceable under § 1983. S*ee*, *e.g.*, *Baker v. McCollan,* 443 U.S. 137, 146 (1979); *Estelle*

---

[10] Hill did not respond to Defendants' argument regarding his state law claim for negligent hiring, training, and supervision in his Response to Defendants' Motion for Summary Judgment.

*v. Gamble*, 429 U.S. 97, 106 (1976); *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005) (intentional infliction of emotional distress does not itself give rise to a § 1983 claim); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) ("Section 1983 does not provide a cause of action for violations of state statutes.").

Nor are violations of state constitutional rights enforceable under § 1983. *Lovell By and Through Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal Constitution and laws . . . [t]o the extent that the violation of a state law amounts to the deprivation of state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.") (internal quotation marks and citation omitted); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) ("[A] claimed violation of a state constitutional right is not cognizable under § 1983."); *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (holding a violation of a state constitutional right does not give rise to a federal cause of action under § 1983).

Because each of his state law claims are either barred under Idaho statute or due to his failure to allege any material facts in support, the Court enters summary judgment on each of Hill's state law claims against each of the Defendants.

## 2. Hill's § 1983 Claims against the County and Sheriff Resser[11]

---

[11] A claim against a state or municipal official acting in his or her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (stating an official capacity claim is simply "another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks and citation omitted).

Section 1983 authorizes an injured person to assert a claim for relief against another who, acting under color of state law, violated the claimant's federally protected rights. Section 1983 does not itself create or establish any federally protected rights. Instead, it creates a cause of action for plaintiffs to enforce federal rights created elsewhere—such as by the U.S. Constitution or, in some cases, by other federal statutes. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979). Hill alleges the Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights.[12]

In *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 693-94 (1976), the Supreme Court held that municipal entities are subject to § 1983 liability, but not on the basis of *respondeat superior*. Instead, to state a claim against a municipality—including local government officials sued in their official capacities—a plaintiff must show the alleged injury was inflicted through execution or implementation of the municipality's "official policy." *Id*. Specifically, a plaintiff must prove: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). An "official policy" may include a "longstanding practice or custom which constitutes the 'standard operating procedure' of

---

[12] The essence of Hill's claim is that the Defendants violated his Fourth Amendment right to be free from unlawful search and seizure. Neither Hill nor the Defendants reference either the Fifth or the Fourteenth Amendments in any of their briefing. Because Hill does not allege facts regarding use of excessive force or any other deprivation extending beyond unreasonable searches and seizures covered by the Fourth Amendment, the Court analyzes Hill's claims under the Fourth Amendment.

the local government entity." *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 471 U.S. 808, 824 (1985).

In this case, even if a constitutional violation occurred, Hill has not presented any evidence that a policy or custom was the moving force behind the violation. In fact, Hill ignores Defendants' *Monell* argument all together.[13]

To the extent Hill asserts a § 1983 claim for inadequate training or supervision, he fails to state a claim under *Monell*. When a cause of action arises out of alleged inadequate training or supervision, a municipality can be held liable only if the training or supervision was so deficient as to constitute "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Only then can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. *Id*. at 389.

To demonstrate deliberate indifference, a plaintiff must ordinarily show a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563

---

[13] While Hill did not address Defendants' *Monell* argument in his Response to the Motion for Summary Judgment, Hill's Complaint alleges "Defendants engaged in a pattern, practice or custom of disguising search warrants and judicial requests with similar addresses and names so they could circumvent judicial review and in this case did in fact deviate from a magistrate's specific orders to search a property other than the one Plaintiff resided in[.]" Dkt. 1, at 3. Hill fails to identify any facts or evidence in the record to support this allegation.

U.S. 51, 62 (2011). A municipality's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference— necessary to trigger municipal liability." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks and citation omitted). Without notice that a course of training or supervision is deficient in a particular respect, "decisionmakers can hardly be said to have deliberately chosen a . . . program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. Moreover, for liability to attach for failure to adequately train or supervise, a plaintiff must prove an identified deficiency in training or supervision actually caused the police officers' deliberate indifference to his constitutional rights. *Canton*, 489 U.S. at 391. Hill does not identify *any* inadequacy in the County or Sheriff Resser's training or supervision, let alone a pattern of similar constitutional violations based on such failure. In the absence of such evidence, Hill can hardly establish a purported deficiency in training or supervision caused the alleged deprivation of his constitutional rights.

Hill also alleges the County and Sheriff Resser were negligent in hiring Dickenson II, Wynn, and Pacione. Dkt. 1, at 6. Under § 1983, municipal liability may be based on deficiencies in hiring in limited circumstances. In *Brown*, 520 U.S. at 412, the Supreme Court held that municipal liability can be premised upon a municipality's deliberately indifferent hiring of a constitutional wrongdoer, but only if the plaintiff demonstrates that the hired officer "was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id*. (emphasis in original). In so holding, the *Brown* Court acknowledged that the fault and

causation standards for inadequate hiring claims are even more stringent than those of inadequate training claims. *Id*. at 415-16. As mentioned, there are no allegations or evidence in the record to suggest Dickenson II, Wynn, or Pacione were likely to violate the Fourth Amendment, nor that the County and Sheriff Resser hired such individuals despite having knowledge of such likelihood.

In sum, because there are no allegations or evidence to suggest the County and Sheriff Resser had a policy or custom that authorized, approved, or otherwise caused the Individual Defendants' actions on the night in question, the County and Sheriff Resser, in his official capacity, are entitled to summary judgment on Hill's § 1983 claims.

Likewise, summary judgment is appropriate to the extent Hill alleges individual capacity claims against Sheriff Resser.[14] "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Like § 1983 municipal liability claims, § 1983 supervisory liability may not be based on *respondeat superior*, but only on the supervisor's own wrongful acts or omissions. *Monell*, 436 U.S. at 694, n. 58; *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). And, like municipal liability, there must be a sufficient causal link or nexus between the supervisor's wrongful conduct and the violation of the plaintiff's federally protected right. *Starr*, 652 F.3d at 1207-08.

It is undisputed that Sheriff Resser was not involved in obtaining the search warrant,

---

[14] Hill's Complaint does not specify whether Sheriff Resser is named in his individual capacity.

executing the search, arresting Hill, or seizing any of Hill's property. Nor does Hill identify any evidence to suggest Sheriff Resser acted, or failed to act, in a manner that was deliberately indifferent to his constitutional rights. As such, Sheriff Resser is also entitled to summary judgment in his individual capacity on Hill's § 1983 claims.

### 3. Section 1983 Claims against the Individual Defendants

The Fourth Amendment provides that the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. An arrest qualifies as a "seizure" of a "person" under this provision. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Whether applied to a search, seizure of property, or arrest, "the touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). Fourth Amendment reasonableness "is predominantly an objective inquiry," which generally questions whether "the circumstances, viewed objectively, justify the challenged action." *Ashcroft*, 563 U.S. at 737 (internal quotation marks, citations and brackets omitted). If so, that action was reasonable "*whatever* the subjective intent" that motivated the relevant officials. *Wren v. United States*, 517 U.S. 806, 814 (1996) (emphasis in original).

Hill contends the Individual Defendants violated his Fourth Amendment rights by conducting a warrantless search of his trailer and seizure of his property, and by arresting him without probable cause. Hill also claims Dickenson Sr. violated the Fourth Amendment by ordering him to provide the combination to the safes in his trailer. The Individual Defendants raise two general defenses. First, they claim there was no constitutional violation. Second, they claim that, even if their conduct was unconstitutional,

they are entitled to qualified immunity.

### a. Illegal Search

Hill contends the search of his trailer was illegal because the search warrant issued by Judge Payne "authorized a search of the gray residence located at 2317 Ora Avenue, yet over the course of several days the [deputies] conducted a search of the light cream colored residence with brown trim located at 2313 Ora Avenue." Dkt. 30, at 6. The Individual Defendants maintain the searches of Hill's trailer and surrounding buildings were within the confines of the warrant.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched." U.S. Const., amend IV. The parties agree that the test for determining the sufficiency of the warrant description is "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Turner*, 770 F.2d 1508, 1510 (1985) (internal quotation marks and citations omitted); *see also* Dkt. 24-1, at 7; Dkt. 30, at 8. In applying this test, the Supreme Court has counseled that search warrants must be tested and interpreted in common sense and realistic, rather than a hypertechnical, manner. *United States v. Ventresca*, 380 U.S. 102, 108-109 (1965); *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983).

The search warrant in this case inaccurately described Hill's residence as "2317 Ora Avenue, St. Maries, Benewah County, Idaho," when Hill's trailer is in fact located at 2313 Ora Avenue, St. Maries, Benewah County, Idaho. Dkt. 24-9, Exhibit G, at 2-3. The

Individual Defendants suggest whether the trailer actually had its own address "is open to debate," because Hill's father, Dale Hill, admitted during his deposition that 2313 and 2317 are taxed as a single unit; there is no dispute there is only one mailbox in front of the property containing both the gray residence and the trailer and the address on that mailbox is for 2317; the trailer does not have a separate driveway leading to it and can be accessed via the driveway to Hill's parents' home at 2317 Ora; and because Hill lists 2317 Ora on both his driver's license and as his mailing address.[15] Dkt. 24-1, at 6. However, both Hill and his father filed declarations citing evidence to suggest Hill's trailer has its own separate address: 2313 Ora. Dkt. 26, ¶¶ 6, 14-15; Dkt. 27, ¶¶ 5-9. The Court thus assumes, for purposes of summary judgment, that the address for Hill's trailer is 2313 Ora. The search warrant also inaccurately implied Hill's residence was gray, when the trailer is light cream with brown trim. *Id.*; Dkt. 26, ¶¶ 7-9.

Hill suggests the search warrant was invalid in light of such inconsistencies. Yet, "[w]here one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity, searches pursuant to such warrants have been routinely upheld." *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979); *Turner*, 770 F.2d at 1510 (finding no violation of Fourth Amendment where warrant contained wrong street address for house to be searched but the description was otherwise sufficiently particular to identify the premises); *United States v. Garza*, 980 F.2d 546, 552 (9th Cir. 1992) (holding search warrant that contained error in

---

[15] At oral argument, the Court asked both defense counsel and counsel for Plaintiff whether the plat map for Benewah County identifies a separate lot or plat for 2313 and 2317. Counsel were unsure and confirmed the Benewah County plat map is not in the record.

one digit of street address of residence to be searched was not invalid and permitted Drug Enforcement Agency agents to search defendant's residence); *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (finding warrant did not run afoul of the Fourth Amendment because it sufficiently described the homeowner's residence despite two inaccuracies).

Here, although the warrant contained errors in the address and color of the residence to be searched, it described Hill's residence with sufficient particularity to satisfy the Fourth Amendment. The Eighth Circuit so held under remarkably similar circumstances in *United States v. McCain*, 677 F.2d 657, 660 (8th Cir. 1982). In *McCain*, law enforcement received information from a CI that narcotics could be found in defendant's office located in the 4500 block of Delmar Street. Defendant operated a machine shop located at 4510 Delmar, and also had an office located at 4512 Delmar. Like the Individual Defendants in this case, the officers in *McCain* did not realize 4510 Delmar and 4512 Delmar were separate addresses, obtained a warrant only to search 4510 Delmar, but actually searched their intended target—the office located at 4512 Delmar.

While finding the search warrant, in specifying "4510" as the operative street address for the officers' search, was technically deficient as to any search of the office located at 4512, the Eighth Circuit noted not every defect in a search warrant violates the Fourth Amendment. *Id*. Instead, the test for determining the sufficiency of the warrant description was, as noted, "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *Id*. (citing *United States v. Gitcho*, 601 F.2d 369, 371 (8th

Cir. 1979)).

The *McCain* Court held the first prong of the *Gitcho* test was satisfied because there was "ample evidence in the record to show that the officers expected to search and reasonably did search . . . the office at 4512 Delmar. The affidavits presented . . . as a basis for a search warrant targeted the 'front office' and workshop as locations for McCain's drugs.'" *Id*. So too does the evidence in the record show that the Individual Defendants expected to search, and reasonably did search, Hill's trailer.

First, as in *McCain*, here a reliable CI told law enforcement that they would find stolen items and heavy narcotic use "at the *residence belonging to Darren Hill*." Dkt. 24-8, Ex. F, at 8-9 (emphasis added). The CI had been present in Hill's trailer with him the week before and had seen drugs and stolen property delivered there. *Id*. at 17. Second, like in *McCain*, the search warrant at issue specifically authorized the search of the "*home of Darren Hill*, including outbuildings and vehicles on the property." Dkt. 24-9, Ex. G (emphasis added). Third, again like in *McCain*, law enforcement intended to search Hill's trailer, but mistakenly believed the trailer did not have its own separate address. Dickenson II knew, "based on personal observations and information obtained from other officers that [Hill] resided in the single wide trailer" located on his parents' property, "and that the drugs, paraphernalia and stolen goods" of which law enforcement had been informed, "were located in the trailer and outbuildings near the trailer." Dkt. 24-24, ¶ 4. Wynn also testified that he and the other officers conducting the search were aware that Hill lived in the trailer and that his parents lived in the separate residence on the property. Dkt. 29, Ex. 9, at 9: 13-14. When questioned why he did not search the gray residence, Dickenson II

stated: "My intent was only to search the residence of Darren Hill, that I knew to be the trailer." *Id*., Ex. 7, at 18. As in *McCain*, here the evidence is clear that the Individual Defendants could locate the appropriate property to be searched with reasonable effort.

Further, although Dickenson II incorrectly described the trailer as being located at 2317 Ora, Dickenson II stated that when he "requested the search warrant and executed the search, I considered the home, the trailer, and the outbuildings all to be part of the property identified as 2317 Ora Avenue. I had no information that the trailer where plaintiff resided had a separate address of 2313 Ora Avenue." Dkt. 24-24, ¶ 9. In *McCain*, the Eighth Circuit held law enforcement's similar failure to realize 4510 Delmar and 4512 Delmar were separate addresses did not provide a basis for suppression where, among other things, 4512 Delmar was not an active mailing address, electric company records showed that electric service was billed to McCain at 4510, and the office area of 4512 was adjacent to the number address (4510) named in the warrant. Similarly, Hill also received his mail at 2317 Ora and identified 2317 Ora on his driver's license and used it as his mailing address; both 2317 Ora and 2313 Ora were taxed as a single parcel; Hill's water service for 2313 Ora was billed to his father at 2317 Ora; Hill's trailer located at 2313 Ora is adjacent to the residence located at 2317 Ora; and there is only one mailbox in front of both properties, marked "2317." *See, e.g.*, Dkt. 24-26; Dkt. 26, ¶ 14; Dkt. 26, Ex. 3.

Under such circumstances, like those in *McCain*, the technical failure of the warrant to designate "2313" as the search target is not grounds for finding a Fourth Amendment violation. Whatever the warrant lacked in accuracy as to the street address and color of the property to be searched, it accurately and with particularity targeted Darren Hill's trailer

and outbuildings near the trailer as the specific premises to be searched.

Similarly, as in *McCain*, the second prong of the *Gitcho* test, the probability of a mistaken search, is negated in this case. Only the places intended to be searched—Hill's trailer and the outbuildings located near his trailer—were searched. The Individual Defendants never entered the gray residence at 2317 Ora Avenue. Hill's father confirmed that at no time during the evening or morning of the search "did law enforcement appear at my residence, knock on my door, or search my property." Dkt. 26, at ¶ 11. Moreover, a mistaken search is unlikely where, as here, the same officer both applied for and executed the warrant. *McCain*, 677 F.2d at 660.

Hill argues the fact that Dickenson II "knew where Darren Hill's residence was located means little" because law enforcement officers' subjective intent and knowledge "should not substitute for the Fourth Amendment's requirement that a search warrant particularly describe the place to be searched." Dkt. 30, at 7. However, the Ninth Circuit has held a warrant description was sufficiently particular where, *inter alia*, the warrant was executed by the officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched, and where the premises that were intended to be searched were those actually searched. *United States v. Turner*, 770 F.2d 1508, 1511 (9th Cir. 1985). Under *Turner*, that Dickenson II both executed and applied for the search warrant, and that Dickenson II and the other deputies knew that Hill resided in the trailer they intended to and did search, supports the Court's finding that the warrant was sufficiently particular to enable the executing officer to locate and identify the premises with reasonable effort and without a reasonable probability of mistake.

### b. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An officer with qualified immunity is not liable even when his or her conduct resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft*, 563 U.S. at 743. When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

There are two prongs to the qualified immunity analysis: (1) whether the officers' conduct, viewed in the light most favorable to the party asserting injury, violated a constitutional right; and (2) whether the right was "clearly established" such that a reasonable officer would have known his conduct violated the right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court need not address the prongs in a particular order. *Pearson*, 555 U.S. at 236.

Although the Court finds the search of Hill's trailer did not run afoul of the Fourth Amendment because the warrant sufficiently described Hill's residence despite two technical inaccuracies, summary judgment is also appropriate because the Individual Defendants are entitled to qualified immunity under the circumstances even if search did

violate the Fourth Amendment. Qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the Defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

Hill suggests the Individual Defendants are not entitled to qualified immunity because the Supreme Court has "recognized that a search or seizure pursuant to an invalid search warrant constitutes an invasion of the plaintiff's constitutional rights," and "[e]ven when only a portion of a search warrant is invalid, the subject of the search suffers a constitutional violation." Dkt. 30, at 16. However, none of the four cases Hill cites in support of these propositions involve circumstances remotely similar to those in this case. *See*, *United States v. Verdugo-Urquidex*, 494 U.S. 259 (1990) (holding the Fourth Amendment did not apply to the search by American authorities of the Mexican residence of a Mexican citizen and resident who had no voluntary attachment to the United States); *United States v. Leon*, 468 U.S. 897 (1984) (finding good faith exception to the Fourth Amendment exclusionary rule should be applied so as not to bar evidence obtained by officers who reasonably relied upon a search warrant issued by a detached and neutral magistrate where the warrant lacked probable cause and was ultimately invalid); *United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005) (considering validity of search executed pursuant to a warrant where officers provided magistrate with the wrong version

of a list of items to be seized, and affirming suppression of only that evidence seized pursuant to unreviewed portions of search warrant); *United States v. Spilotro*, 800 F.2d 959, 968-68 (9th Cir. 1986) (finding suppression appropriate where warrants did not describe the items the items to be seized with sufficient particularity and were "hopelessly general").

Hill does not cite a single analogous case where a search was found to violate the Fourth Amendment due to technical inaccuracies in the warrant such as an incorrect address or wrong color of the home to be searched.[16] For purposes of qualified immunity, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ashcroft,* 63 U.S. at 741(emphasis added). While "a case directly on point" is not required for a right to be clearly established, "existing case precedent must have placed the statutory or constitutional question beyond debate." *Id*. This specific inquiry is "especially important in the Fourth Amendment context," where the Supreme Court "'has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *Saucier*, 533 U.S. at 205). In the absence of any authority that "squarely governs the case here," the Individual Defendants are entitled to qualified immunity and Hill's illegal search claim fails as a matter of law. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).

---

[16] By contrast, numerous courts throughout the country have held search warrants with material inaccuracies do not violate the Fourth Amendment where, as here, the place to be searched is still described with sufficient particularity. *See, e.g., Turner*, 770 F.2d at 1511; *Gitcho*, 601 F.2d at 371; *McCain*, 677 F.2d at 660; *United States v. Shropshire*, 498 F.2d 137, 142 (6th Cir. 1974); *State v. O'Keefe*, 141 P.3d 1147, 1154 (Id. Ct. App. 2006); *see also* Dkt. 31, at 4.

**c. Excessive Force**

Hill's Complaint also raises an excessive force claim. Dkt. 1, at 6. This claim appears to be based entirely on the Individual Defendants' conduct in handcuffing and detaining him during the search of his trailer, as Hill has not alleged or offered any evidence to suggest he was physically mistreated while handcuffed or in custody.

A claim that law enforcement officials have used excessive force in the course of an arrest or other "seizure" of a person is properly analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has held an officer's authority to detain a suspect incident to a search is categorical, and the use of handcuffs to effectuate plaintiff's detention for the duration of a search is reasonable force because a search presents an inherently dangerous situation. *Muehler v. Mena*, 544 U.S. 93, 98 (2005); *Michigan v. Summers*, 452 U.S. 692, 702-3 (1981). Hill's excessive force claim thus fails as a matter of law.

**d. Unlawful Restraint**

Citing Idaho Code section 19-607, Hill alleges that at the time he was arrested, the Individual Defendants "only had misdemeanor law violations" and suggests an arrest at night in the case of a misdemeanor may not be made with a warrant unless specifically ordered by a magistrate. Dkt. 30, at 13. Idaho Code section 19-607 is inapplicable because it applies to arrests made upon a warrant. Here, the arrest was not made pursuant to an arrest warrant, but was instead based on a misdemeanor (possession) committed in the Individual Defendants' presence. Idaho Code section 19-603(1); *Smith v. Lott*, 249 P.2d 803 (Idaho 1952) (holding Idaho Code section 19-607 has no application to offenses

committed in the presence of an officer). Moreover, as previously discussed, violation of a state statute does not give rise to a § 1983 claim. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).

      **e**. **Unlawful Arrest**

Hill also suggests his arrest was unlawful under Idaho code section 19-608 because he was not informed of why he was being arrested and was denied the right to have representation present during his arrest. Dkt. 30, at 13. Again, however, § 1983 does not offer redress for the violation of a state law that reaches beyond those rights guaranteed by the Constitution. *Lovell By and Through Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 370 (9th Cir. 1996).

Under the Constitution, the reasonableness of a warrantless arrest is determined by the existence of probable cause. *Barry*, 902 F.2d at 772. "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 773 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Hill contends his arrest lacked probable cause because it "occurred immediately upon law enforcement's contact with him and prior to law enforcement locating any drugs or paraphernalia." Dkt. 30, at 15. This argument ignores that Judge Payne had found probable cause to believe that the law was being violated in Hill's trailer. As the Supreme Court held in *Michigan v. Summers*, 452 U.S. 692, 701 (1981):

> The existence of a search warrant . . . provides an objective justification for the detention. A judicial officer has determined that police have probable cause to believe someone in the home is committing a crime. Thus a neutral

magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.

*Id*. at 703-704.

Hill does not dispute that the Individual Defendants had probable cause to arrest him once they discovered the drugs and paraphernalia in his trailer. Dkt. 30, at 15. Because it was lawful to detain Hill until the evidence establishing probable cause to arrest him was found, his arrest was constitutionally permissible. *Michigan*, 452 U.S. at 705.

### f. False Imprisonment

Hill also cites a number of Idaho cases to suggest he was falsely imprisoned. Dkt. 30, at 14. Although, as explained above, Hill's false imprisonment claim fails under Idaho law, even if such cases were somehow relevant to his § 1983 claim (they are not), Hill references the elements of false imprisonment under Idaho law without explaining how the facts of his case meet such elements. *Id*.

"There are two bases for a federal claim of false imprisonment: imprisonment pursuant to a false arrest and unreasonable delay in bringing the arrested person before a judicial officer." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). Hill cannot establish the former because the Individual Defendants had probable cause to arrest him. The latter also fails as a matter of law because Hill does not contend that there was an unreasonable delay in bringing him before a judicial officer. The undisputed facts show that Hill was arrested on Saturday, February 19, 2017, that he was brought before

Judge Payne, who found probable cause to set bond on Monday, February 21, 2017, and that Hill posted bond and was released from custody the same day. Dkts. 24-15, Ex. M; 24-16, Ex. N; 24-17, Ex. O.

Because the Individual Defendants had probable cause to arrest Hill upon discovery of his drugs and paraphernalia, and because Hill does not suggest there was any unreasonable delay in bringing him before Judge Payne, Hill fails to state a claim for unlawful imprisonment under § 1983.

### g. Illegal Seizure of Property

Like the identification of the place to be searched, the Fourth Amendment requires that a warrant particularly describe the things to be seized. *Spilotro*, 800 F.2d at 963. The description must be specific enough to enable the officer conducting the search to reasonably identify the items that are authorized to be seized, and to prevent general, "exploratory searches and indiscriminate rummaging through a person's belongings." *Id*. (citing *United States v. McClintock*, 748 F.2d 1278, 1282 (9th Cir. 1984)). "It also ensures that the magistrate issuing the warrant is fully apprised of the search and can thus accurately determine whether the entire search is supported by probable cause." *Id*. (citing *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982)). Hill does not dispute the lawfulness of the seizure of his narcotics and paraphernalia. Instead, he challenges the seizure of the tools located in his trailer and surrounding outbuildings because the search warrant did not describe such tools with sufficient particularity. Dkt. 24-9, Ex. G; Dkt. 30, at 11-12.

"The specificity required in a warrant varies depending on the circumstances of the

case and the type of items involved." *Spilotro*, 800 F.2d at 963. Warrants, such as that here, which describe generic categories of items, "are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *Id*. (citing *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982)). In determining whether a description is sufficiently precise, the Ninth Circuit has considered one or more of the following:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Id*. (citations omitted)

Hill suggests the seizure of the tools located in his trailer and surrounding outbuildings was unlawful because such tools were generically identified as "hand tools" and not described with any other particularity. Dkt. 24-9, Ex. G; Dkt. 30, at 11-12. Notwithstanding the general description in the search warrant, here the Individual Defendants were searching for specific tools stolen from Buell's shop and residences located in Benewah County. The CI informed Dickenson II that many of these items—including multiple groups of tools and air tools stolen from Buell's shop, could be located at Hill's property, and that she had been present at Hill's property multiple times when such items were dropped off. Dkt. 24-8, Ex. F at 8, 10; Dkt. 29, Ex. 2 at 16. Richardson, who was investigating the thefts, did not have a full list of the items stolen at the time the search warrant was executed, but did have a partial list. *Id*. at 11. The CI confirmed the tools identified in Richardson's partial list could be located at Hill's residence. *Id*. at 11-

12; Dkt. 29, Ex. 2 at 16.

Richardson was called in during the search to identify any stolen property. Richardson determined several of the tools located at the trailer and nearby outbuildings matched the descriptions of property that had been reported stolen. Dkt. 24-25, ¶ 2. Thus, the Individual Defendants did not simply seize all "hand tools" discovered at Hill's property, but instead seized only those which matched the description of specific property that had been reported as stolen in Richardson's investigation. *Id*.; Dkt. 24-13, Ex. K.

Under *Spilotro*, each of the considerations identified by the Ninth Circuit for evaluating whether a warrant was sufficiently precise are met. First, there was probable cause to seize the items identified as stolen in Richardson's investigation and confirmed by the CI to be located at Hill's trailer. Second, the Individual Defendants followed objective standards because they did not indiscriminately seize hand tools but instead seized only those which matched the description of property that had been reported as stolen in Richardson's investigation. Third, the government was not able to particularly describe the stolen property at the time the warrant was issued because Richardson had not yet provided Dickenson II and Robinson with a complete list of stolen property. That the Individual Defendants nevertheless searched for and seized only those items that matched the stolen property identified by Richardson illustrates the warrant was sufficiently particular to identify the items to be seized. Moreover, as the Individual Defendants note, Hill has not identified a single item which was seized which was outside the scope of the warrant. Dkt. 31, at 5.

In sum, Hill does not present any material facts to support his claim for unlawful

seizure in violation of the Fourth Amendment. Again, however, even if Hill could establish the seizure of his hand tools violated the Fourth Amendment, he does not cite to a single case where an employee acting under similar circumstances was held to have violated a plaintiff's right to be free from unlawful seizures. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("The panel majority misunderstood the 'clearly established' analysis: it failed to identify a case where an officer operating under similar circumstances as officer White was held to have violated the Fourth Amendment."). The Individual Defendants are accordingly entitled to summary judgment on Hill's unlawful seizure claim.

### h. Dickenson Sr.

Finally, Hill argues Dickenson Sr. unlawfully ordered him to provide the combination to the safes located in his trailer. Hill does not dispute that he did not give Dickenson Sr. the safe combinations. Hill does not cite any caselaw to suggest that ordering a person to provide a safe combination is unconstitutional, nor provide any evidence to suggest the request was unreasonable. As such, Hill's § 1983 claim against Dickenson Sr. fails as a matter of law.

Sometime after Hill disregarded Dickenson Sr.'s order, the Individual Defendants broke into the two safes located in Hill's trailer. Hill contends search of the safes was illegal for the same reason search of the trailer was illegal: because the warrant only authorized search of containers located at 2317 Ora, and not those located in 2313 Ora. For the reasons discussed *supra*, section III.3.a, the Court rejects this argument. The warrant described Hill's trailer, and thus the containers located within his trailer, with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort,

and without any reasonable probability that another property might be mistakenly searched. *Turner*, 770 F.2d at 1510. While search of the safes was therefore constitutional, even if such search violated the Fourth Amendment, Hill again fails to identify any authority to suggest the Individual Defendants violated a clearly established right to which he was entitled when opening his safes. Qualified immunity therefore applies, and summary judgment is granted on this claim as well.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 24) is **GRANTED** and this case is dismissed in its entirety.

2. Pursuant to Federal Rule of Civil Procedure 58, a separate judgment will issue.

DATED: March 4, 2020

David C. Nye
Chief U.S. District Court Judge